USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  11/29/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MITCHELL TAEBEL,                               :
                                               :
                       Petitioner,             :          **REPORT AND**
                                               :          **RECOMMENDATION**
              -v-                              :
                                               :          16-CV-6337 (WHP) (JLC)
JUSTICE MICHAEL SONBERG,                       :
                                               :
                       Respondent.             :
-------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable William H. Pauley, III, United States District Judge:**

*Pro se* petitioner Mitchell Taebel seeks a writ of habeas corpus pursuant to 28
U.S.C. § 2254 following his conviction of third-degree assault and attempted second-
degree assault.  Taebel was sentenced to an aggregate term of six months of
imprisonment followed by five years of probation.  For the reasons discussed below,
his petition should be denied.

# I.      BACKGROUND

## A.      Overview of Charges

The following facts are drawn from the record of Taebel's proceedings in state
court.[1]  Given Taebel's conviction, the Court summarizes the facts in the light most
favorable to the verdict.  *See, e.g., Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

---

[1]  The state court record ("SR.") is filed as exhibits 1 to 15 of docket entry 9.
Pinpoint citations to these filings refer to the pagination that runs throughout all
exhibits.  The trial transcript ("TR.") is filed as exhibits 16 to 19 of docket entry 9.
Unlike the state court record, the trial transcript does not have consistent
pagination that runs throughout all exhibits.  Therefore, unless specified otherwise,

On September 2, 2011, Taebel entered The Barclay, a large luxury high-rise apartment building on the upper east side of Manhattan. TR. at 129, 168, 174. Taebel was stopped in the lobby by Frank Martoni, the building's doorman, and Andrea Weinbaum, the building's on-site manager. *Id.* at 38, 49, 130, 133-34. Martoni and Weinbaum told Taebel that he "ha[d] to be announced" and would not be permitted to enter unless he had a permission slip. *Id.* at 36-38, 131-34. Taebel responded that he lived in The Barclay. *Id.* at 38. After a heated exchange, Taebel walked past Martoni and Weinbaum and headed toward the elevators. *Id.* at 38-39, 135. When Martoni attempted to stop him, Taebel punched Martoni twice in the left temple, near his eye. *Id.* at 39. Martoni was stunned by these two initial punches, and Taebel then punched him two more times in the same spot. *Id.* at 39. Taebel proceeded to take the elevator upstairs to his girlfriend's apartment, where police arrested him shortly thereafter. *Id.* at 94-95, 170-71. Martoni sustained injuries requiring surgery to his left eye socket. *Id.* at 54-55.

As a result of these events, a New York County grand jury indicted Taebel on charges of third-degree assault, attempted second-degree assault, and second-degree criminal trespass. SR. at 13-15. On January 9, 2013, Taebel proceeded to trial *pro se* before the Honorable Michael Sonberg of New York State Supreme Court, New York County and a jury.

<hr />

citations to "TR." refer to the trial proceedings that took place from January 14, 2013 through and including January 17, 2013, the transcript for which begins in exhibit 17 and ends in exhibit 19 of docket entry 9. The sentencing transcript ("TS.") is filed as part of exhibit 19 of docket entry 9.

**B.      The Trial**

**1.      The Prosecution's Case**

The prosecution's case included testimony from three witnesses:  Martoni,

Weinbaum, and Michael Farinaccio, the police officer who arrested Taebel.  Their

testimony is summarized below.

By the date of Taebel's arrest, Martoni had been working at The Barclay as a

doorman for nearly 28 years.  *Id.* at 28.  Weinbaum had worked at The Barclay for

two and a half years and was the on-site building manager.  *Id.* at 130.

On September 2, 2011, Martoni and Weinbaum were working together at the

front desk of the lobby.  *Id.* at 38, 46, 49, 133.  Taebel entered the lobby at around

noon and started walking toward the elevators.  *Id.* at 38, 39, 133.  Martoni

recognized Taebel, but had not seen him frequently enough to think that he lived at

The Barclay.  *Id.* at 36-37, 87-88.

Martoni stopped Taebel and told him that he needed to be announced.  *Id.* at

38, 49, 133-34.  Taebel became hostile toward Martoni for stopping him, asked

"what is your fucking problem, Frank?" and said "I fucking live here."  *Id.* 38, 49,

133-35.  Weinbaum then stepped in to explain to Taebel that he needed permission

in order to enter the building.  *Id.* at 134.  In response, Taebel became "upset" and

"angry."  *Id.* at 49, 134-35.  He ignored Weinbaum and Martoni and continued

walking toward the elevators.  *Id.* at 39, 135.

Martoni followed Taebel and, upon seeing one of the elevators open up,

walked toward it with the intention of placing his foot in the door to stop it from

closing. *Id.* at 39-40. Before he could reach the elevator door, Martoni heard "what is your fucking problem, Frank" again and received "two shots to [his] left temple." *Id.* at 39. Martoni, staggered from the blows, grabbed hold of the entrance to the elevator and "pulled [him]self out." *Id.* He then heard once again "what is your fucking problem, Frank" and received "two more shots to the same spot." *Id.* These subsequent two "shots" put him "on the other side of the hall[.]" *Id.* Martoni turned to see Taebel in the elevator as the door closed. *Id.* Taebel took the elevator to the apartment of his girlfriend, Raquel Toro, who lived in the building. *Id.* at 170-72.

Martoni testified that he did not strike Taebel at any point during the altercation or otherwise touch him in any way. *Id.* at 41-42.

Although Weinbaum did not witness the physical altercation between Taebel and Martoni, she testified that after Taebel started walking toward the elevators, Martoni ran after him and put his arms out "against the elevator so that [Taebel] would not go in the elevator." *Id.* at 136. Taebel confronted Martoni and was "pretty much in his face." *Id.* at 136, 138. Weinbaum then turned to tend to the entrance door of the building. When she looked back, she saw Martoni "come out of the elevator holding his left eye." *Id.* at 137. Martoni "had blood around his eye and his eye was bruised." *Id.* at 139.

The responding officer, Farinaccio, testified that when he arrived on the scene, Martoni "was holding his left eye, he had a laceration, [and] he was bleeding from the left eye." *Id.* at 94. Farinaccio then arrested Taebel at his girlfriend's

apartment.  *Id.* at 94-95.  Farinaccio testified that Taebel "appeared to be in normal condition" at the time of his arrest and did not receive any medical attention.  *Id.*

Martoni left The Barclay shortly after the incident to receive medical attention.  *Id.* at 42-43.  He was found to have orbital fractures to his eye socket, and required surgery to fix them.  *Id.* at 52, 55.

### 2.    The Defense Case

Taebel proceeded *pro se* at trial.[2]  He testified on his own behalf, but did not call any witnesses.  His version of events is summarized below.

In 2011, Taebel was 25 years old.  TR. at 176.  Taebel met Toro, a tenant at The Barclay, in March 2011 and testified that he had lived in the building with Toro since May 2011.  *Id.* at 161, 198-99.  Taebel was not listed on the lease for Toro's apartment, and Toro did not notify the building's management company that Taebel had moved in.  TR. at 118, 161, 204.

Taebel testified that on September 2, 2011, he left The Barclay to go get breakfast, and when he returned 15 minutes later, he was stopped by Martoni and Weinbaum at the building's entrance.  *Id.* at 167.  Taebel also testified to having had contentious run-ins with doormen at The Barclay in the past, and he believed that Martoni and Weinbaum did not have "good intentions" when they stopped him.  *Id.* at 168-69.

---

[2]  Taebel was assisted by standby counsel, but, at his request, she was asked to leave the defense table before the prosecution began presenting its case-in-chief.  TR. at 18-19; TS. at 21.

According to Taebel, upon being confronted, he tried to reason with Weinbaum and Martoni, who were both being "jerks" and "mean." *Id.* at 169. When they said Taebel did not have permission to enter the building, he told them that they could call the police if they wanted to. *Id.* Taebel then walked past Martoni and Weinbaum toward the elevators. *Id.*

Taebel testified that Martoni tried to block him from entering the elevator, but Taebel pushed through into the elevator. *Id.* Once inside, Martoni "lost it." *Id.* Martoni "started attacking" Taebel and the altercation became "a frantic grabbing match." *Id.* Martoni was 6'3" tall and weighed about 300 pounds, while Taebel was 5'10" tall and weighed about 176 pounds. TR. at 176; SR. at 529, 533.[3] Taebel testified that he "got hit in the face in the middle of" the altercation with Martoni, and that he was forced to strike Martoni out of self-defense. TR. at 169-70. Taebel claimed that he only struck Martoni once. *Id.* Martoni "paused for a minute" after being hit, and then he and Taebel both walked out of the elevator. *Id.* Taebel got back in the elevator and took it up to Toro's apartment. *Id.* at 170-71. He claimed to have sustained a "bloody lip" as a result of the altercation with Martoni. *Id.* at 170.

### 3.    Verdict and Sentencing

On January 16, 2013, the jury found Taebel guilty of third-degree assault and attempted second-degree assault. TR. at 282-83; SR. at 68. He was acquitted of

---

[3] Martoni's height and weight are referred to in Taebel's counseled brief on appeal, where Taebel cites "People's Exhibits 14-15."

second-degree criminal trespass. *Id.* On May 10, 2013, Justice Sonberg sentenced

Taebel to six months of imprisonment and five years of probation for the attempted

second-degree assault count, and a concurrent sentence of six months for the third-

degree assault count. TS. at 18-22; SR. at 11-12.

## C. Post-conviction Proceedings in State Court

### 1. Motion to Set Aside the Verdict

On or about March 26, 2013, Taebel, represented by counsel, filed a motion

under N.Y. Criminal Procedure Law ("NYCPL") § 330.30 to set aside the verdict.

SR. at 91-140. He argued that the jury's verdict was based upon legally insufficient

evidence and that the prosecution engaged in misconduct by 1) characterizing

Taebel as a liar, 2) vouching for the credibility of Martoni, 3) attempting to shift the

burden of proof, 4) referring to facts not in evidence, and 5) drawing inflammatory

conclusions. *Id.* at 95-110. Justice Sonberg denied the motion following a hearing

on May 1, 2013.[4]

### 2. Motion to Vacate the Judgment

On or about August 21, 2013, Taebel filed a *pro se* motion to vacate the

judgment under NYCPL § 440.10. SR. at 284-348. He argued again that the

verdict was based upon legally insufficient evidence and also that there had been

due process violations. *Id.* In regard to the due process claim, Taebel asserted

claims of 1) judicial interference and abuse of discretion by the trial court by

---

[4] The state court record does not contain a transcript of the hearing of May 1, 2013. However, both petitioner and respondent's appellate briefs refer to Justice Sonberg's decision denying the motion. SR. at 536-37, 581-82.

excessively interrupting Taebel's cross-examination of witnesses and preventing the introduction of allegedly exculpatory evidence, 2) prosecutorial misconduct, and 3) ineffective assistance of counsel based upon the trial court's denial of Taebel's request that different counsel be appointed to assist him. *Id.*

By decision and order dated December 9, 2013, Justice Sonberg denied Taebel's NYCPL § 440.10 motion and noted that the "underlying facts" supporting Taebel's motion were "contained within the trial transcript and therefore evident on the record," and thus should be addressed by direct appeal to the Appellate Division. *Id.* at 360-62. On or about December 27, 2013, Taebel filed a *pro se* application for leave to appeal the denial of his NYCPL § 440.10 motion. *Id.* at 363-513. The First Department denied the application on May 7, 2014. *Id.* at 521.

### 3.    The Direct Appeal

On or about May 17, 2013, Taebel, represented by counsel, appealed his conviction to the First Department. SR. at 4-90. In his appeal, Taebel argued that the verdict was based upon legally insufficient evidence and was against the weight of the evidence. *Id.* at 522-47. In a *pro se* supplemental brief, Taebel also presented the arguments, made in his motions under NYCPL §§ 330.30 and 440.10, of judicial interference and abuse of discretion, prosecutorial misconduct, and ineffective assistance of counsel. *Id.* at 548-64.

On April 26, 2016, the First Department affirmed the judgment convicting Taebel of third-degree assault and attempted second-degree assault, finding that "[t]here is no basis for disturbing the jury's determinations concerning credibility"

and that "[t]he evidence refuted defendant's justification defense, and established his intent to cause serious physical injury." *Id.* at 608-09. The First Department also "considered and rejected" Taebel's remaining *pro se* arguments. *Id.*

On or about May 25, 2016, Taebel applied for leave to appeal his conviction to the Court of Appeals. *Id.* at 610-11. By order dated July 27, 2016, the Court of Appeals denied this application. *Id.* at 614.

## D. This Proceeding

On August 10, 2016, Taebel, proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petition for Writ of Habeas Corpus dated August 4, 2016, Dkt. No. 1 (the "Petition").[5] As grounds for his Petition, Taebel contends that the evidence presented against him at trial was not legally sufficient to support the jury's verdict. *Id.* at 6.[6] He writes three sentences in support of this argument:

> 1) The complaining witness's test[i]mony contradicts the only other witness and that of the Defendant's.
>
> 2) There are inher[e]nt contradictions within the testimony of the complaining witness.

---

[5] The Petition incorrectly named Justice Sonberg as the respondent in this proceeding. The respondent in a habeas petition filed by a petitioner who is on probation should be "the particular probation or parole officer responsible for supervising the applicant, and the official in charge of the parole or probation agency, or the state correctional agency, as appropriate." *See* Rule 2 of the Rules Governing § 2254 Cases in the United States District Courts, Advisory Committee Notes. However, counsel for respondent does not take issue with the designation of Justice Sonberg as the respondent in his opposition to the Petition.

[6] Unless specified otherwise, pincites refer to a document's internal pagination rather than to the page numbers electronically generated by the ECF system.

> 3) The complaining witness's testimony does not make
> sense and should be legally increadible [sic].

*Id.* On February 2, 2017, the Attorney General's Office filed papers in opposition to the Petition.[7] The opposition papers consist of a memorandum of law in opposition, Dkt. No. 8, answer, Dkt. No. 9, and the state court record, Dkt. Nos. 9-10.

## II.  DISCUSSION

### A.  Legal Standards for Habeas Relief under Section 2254

#### 1.  "In Custody" Requirement

"In order for a federal court to have jurisdiction over a habeas petition, the petitioner must be 'in custody pursuant to the judgment of a State court' at the time the petition is filed." *Vega v. Schneiderman*, 861 F.3d 72, 74 (2d Cir. 2017) (quoting 28 U.S.C. § 2254(a)). This requirement "may be satisfied by restraints other than 'actual, physical custody' incarceration." *Id.* (quoting *Jones v. Cunningham*, 371 U.S. 236, 239-40 (1963)). "The focus is not so much on actual physical custody, but the severity of an actual or potential restraint on liberty." *Id.* (internal quotations omitted) (quoting *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 894-95 (2d Cir. 1996)).

"An individual on probation or parole is 'in custody' for purpose of federal habeas corpus proceedings." *Rosato v. N.Y. Cty. Dist. Attorney's Office*, No. 09-CV-3742 (DLC), 2009 WL 4790849, at *4 (S.D.N.Y. Dec. 14, 2009) (citing *United States*

---

[7] By agreement with the District Attorney's Office, the Attorney General's Office is representing the respondent in this proceeding. Answer dated February 14, 2017, Dkt. No. 9, ¶ 3.

*v. Shelly*, 430 F.2d 215, 217 n.3 (2d Cir. 1970)); *Dixon v. Miller*, 293 F.3d 74, 78 (2d Cir. 2002) (defendant on parole deemed "in custody" for habeas proceedings) (citing *Jones*, 371 U.S. at 242-43).

### 2. Exhaustion Doctrine

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief unless a petitioner has first exhausted his claims in state court. *See* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). This exhaustion requirement is grounded in principles of comity and federalism. *Id.* at 844.

Exhaustion "requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual

and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)). "While 'a state prisoner is not required to cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.'" *Id.* (quoting *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)). A petitioner may sufficiently alert the state court to the nature of his constitutional claim by citing to a specific constitutional provision. *See, e.g.*, *Quinones v. Ercole*, 310 Fed. App'x 434, 436 (2d Cir. 2009). However, a petitioner may not merely "make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Gray v. Netherland*, 518 U.S. 152, 163 (1996) (citing *Anderson v. Harless*, 459 U.S. 4 (1982)).

### 3. Procedural Bar to Claims Deemed Exhausted

Under "the doctrine of procedural default, . . . a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 747-48 (1991). If a petitioner has failed to raise a particular claim in state court and would be precluded from doing so now because of a state procedural rule, the federal court "must deem the claim procedurally defaulted." *Jones v. Murphy*, 694 F.3d 225, 247 (2d Cir. 2012) (quoting *Carvajal*, 633 F.3d at 104). Under these circumstances, the claim meets the technical requirements for exhaustion because

state remedies are no longer "available" to the petitioner. *Coleman*, 501 U.S. at 732 (citing 28 U.S.C. § 2254(b)).

If a claim is deemed to be exhausted by virtue of a procedural default, a federal court may not reach the claim's merits "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Id.* at 750; *see also Murray v. Carrier*, 477 U.S. 478, 492 (1986); *Smith v. Duncan*, 411 F.3d 340, 347 (2d Cir. 2005). Absent a showing of cause and actual prejudice, a petitioner is entitled to habeas review only if he can demonstrate that denying review would result in a "fundamental miscarriage of justice." *Murray*, 477 U.S. at 495-96. A fundamental miscarriage of justice is "an extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray*, 477 U.S. at 496. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)); *see also Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

## 4.    Standard of Review Under AEDPA

Under AEDPA, courts may only grant a habeas petition if the challenged state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time of the state court decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"A state court decision is 'contrary to . . . clearly established Federal law, as determined by the Supreme Court' when 'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" *Carmichael v. Chappius*, 848 F.3d 536, 544 (2d Cir. 2017) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)); *see also Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (circuit precedent, even if "merely reflect[ing]" Supreme Court precedent, does not constitute "clearly established federal law" for purposes of § 2254(d)(1)).

A state court makes an unreasonable application of federal law if it "correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014). Such application of federal law must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Id.* at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)).

AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Jones*, 694 F.3d at 234 (quoting *Hardy v. Cross*, 565 U.S. 65, 66 (2011)). The standard "is difficult to meet," and it was intended to be. *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be.")).

5.     **Standard for Legal Insufficiency**

The Due Process Clause of the Fourteenth Amendment requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which the defendant is charged." *Langston v. Smith*, 630 F.3d 310, 314 (2d Cir. 2011) (alteration omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)). To determine whether sufficient evidence supported a habeas petitioner's criminal conviction, courts must ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). This deferential standard of review is only magnified in the habeas context. As the Supreme Court has stated:

> [Insufficiency claims] face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (internal quotation marks and citations omitted). In determining the sufficiency of a state-law conviction, a federal habeas court "must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

### 6.    *Pro se* Status

A petitioner bears the burden to establish, by a preponderance of the evidence, that his constitutional rights have been violated.  *See, e.g.*, *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013).  However, the submissions of a *pro se* petitioner are held to less stringent standards than formal pleadings drafted by lawyers.  *See, e.g.*, *Davis v. Walsh*, No. 08-CV-4659 (PKC), 2015 WL 1809048, at *1 n.1 (E.D.N.Y. Apr. 21, 2015) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  Courts must liberally construe a "*pro se* petition 'to raise the strongest arguments' it suggests."  *Id.* (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006)).  *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law."  *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

### B.    Analysis

### 1.    Taebel is "In Custody" of the State

On May 10, 2013, Taebel was sentenced to six months of imprisonment and five years of probation.  TS. at 18-22; SR. at 11-12.  By the time Taebel filed the Petition on August 10, 2016, he had fully served his prison sentence.  However, his probationary sentence does not end until mid-2018.

Taebel's sentence of probation is sufficient to satisfy the "in custody" requirement for habeas proceedings.  *See, e.g.*, *Rosato*, 2009 WL 4790849, at *4; *Maltsev v. Albany Cty. Probation Dep't*, No. 03-CV-1309, 2005 WL 1397135, at *1 n.2 (N.D.N.Y. June 13, 2005) (defendant on probation deemed "in custody" for

habeas proceedings), *adopted by*, 2006 WL 1174315 (N.D.N.Y. May 1, 2006), *aff'd*, 303 F. App'x 973 (2d Cir. 2008).  Moreover, two of Taebel's probation conditions require him to appear in certain places at certain times:  First, he must enroll in a supervised anger management program, and second, he must be employed.  TS. at 18-19.  Each of these conditions prevents Taebel "from exercising the free movement and autonomy available to the unrestricted public," thereby further indicating that he remains "in custody" of the state.  *Nowakowski v. New York*, 835 F.3d 210, 216 (2d Cir. 2016).

### 2.    Taebel's Insufficiency of the Evidence Claim is Exhausted and Not Procedurally Barred

Taebel argued in his direct appeal that the verdict was based upon legally insufficient evidence and that it was against the weight of the evidence.  SR. at 522-64.  In affirming the jury's verdict, the First Department concluded that "[t]here is no basis for disturbing the jury's deliberations concerning credibility.  The evidence refuted defendant's justification defense, and established his intent to cause serious physical injury."  *Id.* at 608-09.  Taebel then sought leave to appeal the First Department's order with the Court of Appeals.  *Id.* at 610-11.  The application was denied.  *Id.* at 614.

Taebel's application to the Court of Appeals, and its denial of said application, was his last available state court remedy.  His claim of legally insufficient evidence is therefore exhausted, and it is not subject to any state procedural bars (nor does respondent contend otherwise).

### 3. The State Court's Rejection of Taebel's Insufficiency of the Evidence Claim was Not Objectively Unreasonable

In the Petition, Taebel argues that the verdict was based upon legally insufficient evidence because 1) Martoni's testimony is contradicted by Weinbaum and Taebel's testimony, 2) there are "inherent contradictions" within Martoni's testimony, and 3) Martoni's testimony "does not make sense" and should be treated as "legally incredible." Petition at 6. Although the Petition is devoid of detail or any explanation of the facts underlying these arguments, in view of Taebel's *pro se* status, the Court looks to his briefs on appeal for facts and arguments that may support his claim.

#### a. Contradictions in Witness Testimony

Taebel's first two "legal insufficiency" arguments in the Petition concern contradictions in the witnesses' testimony. *See* Petition at 6. In Taebel's submissions on appeal, he argued that Martoni's testimony was purportedly contradicted by that of Weinbaum and Taebel himself. SR. at 548-59. Specifically, while Martoni testified that he was struck from behind as he was walking toward the elevator, TR. at 39, Weinbaum testified that Martoni was "facing" Taebel and "put his arms to his sides" to prevent Taebel from entering into the elevator, *id.* at 135-36, and Taebel testified that Martoni attempted to block his access to the elevator. *Id.* at 169. Moreover, while Martoni testified that the fight put him "on the other side of the hall" to the elevators, *id.* at 39, Weinbaum testified to seeing Martoni "come out of the elevator" holding his left eye, *id.* at 137, and Taebel similarly testified that Martoni came out of the elevator following their altercation,

*id.* 169-70.  Taebel also argued that certain critical aspects of Martoni's testimony were not corroborated by Weinbaum and thus could not be used to defeat Taebel's own testimony.  SR. at 541.[8]

Taebel also argued on appeal that Martoni's testimony contained "inherent contradictions."  A review of Taebel's submissions on appeal suggest that these "inherent contradictions" involved Martoni's testimony about when he had first seen Taebel in The Barclay.  SR. at 549-51.  Specifically, Martoni testified before the grand jury that he first met Taebel in August of 2011.  TR. at 75.  Yet at trial Martoni testified that he did not remember the first time he saw Taebel.  *Id.* at 73-74.  Taebel suggests that this "inherent contradiction" proves the unreliability of Martoni's testimony, which therefore could not serve as a legally sufficient basis for Taebel's conviction.

Taebel's arguments do not have any merit.  "It is well-established that credibility determinations are to be made by the fact-finder and are not reviewable by a federal habeas court."  *Scott v. Graham*, No. 16-CV-2372 (KPF) (JLC), 2017 WL 2820061, at *21 (S.D.N.Y. June 29, 2017) (citing *Schlup v. Delo*, 513 U.S. 298, 330

---

[8]  In fact, not only does Taebel argue that Weinbaum's testimony did not corroborate Martoni's, but he also suggests Weinbaum's testimony was itself untruthful at least in part.  Weinbaum testified that, as the altercation escalated between Martoni and Taebel, she "turned around" toward the entrance because "there was nobody at the door and people were kind of coming in, looked like they were coming in[.]"  TR. at 136.  Taebel cites to video footage indicating that no one actually entered the front door at that time.  SR. at 541, 544.  Taebel thus concludes that Weinbaum's "claim of distraction was demonstrably false," *id.* at 541, and "clearly contrived in an effort not to undermine her fellow employee."  *Id.* at 544.

(1995)); *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; we defer to the jury's assessments of both of these issues."). Indeed, "where there are conflicts in testimony, the court defers 'to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence.'" *Lopez v. Superintendent of Five Points Corr. Facility*, No. 14-CV-4615 (RJS) (JLC), 2015 WL 1300030, at *17 (S.D.N.Y. Mar. 23, 2015) (quoting *United States v. Best*, 219 F.3d 192, 200 (2d Cir. 2000)), *adopted by*, 2015 WL 2408605 (S.D.N.Y. May 20, 2015).

Here, the jury credited Martoni's testimony that, in response to stopping and questioning Taebel in the building's lobby, Taebel punched Martoni four times without justification. The jury rejected Taebel's testimony that he punched Martoni only once as an act of self-defense. Such credibility determinations are within the ken of the jury, whose judgment should not be substituted by that of the reviewing habeas court. *See, e.g.*, *Jamison v. Griffin*, No. 15-CV-6716 (PKC) (AJP), 2016 WL 1698350, at *31 (S.D.N.Y. Apr. 27, 2016) (rejecting legal insufficiency claim and deferring to jury's decision, which "was largely a matter of choosing whether to believe the defense's version of the events or to believe the version offered by the State") (alteration omitted) (quoting *Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981)), *adopted by*, 2016 WL 4030929 (S.D.N.Y. July 27, 2016). Moreover, the jury was entitled to rely solely on Martoni's testimony for reaching a guilty verdict.

*See, e.g.*, *Scott*, 2017 WL 2820061, at *21 (noting that a "single, eyewitness testimony, even uncorroborated, is sufficient to support conviction") (citing *Edwards v. Jones*, 720 F.2d 751, 755 (2d Cir. 1983)); *see also United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979). To the extent the purported inconsistencies, or "contradictions," raised by Taebel in his submissions on appeal were apparent to the jury at the time of trial, it was the jury's determination that the inconsistencies did not compromise Martoni's credibility.

In short, the jury could have credited Martoni's testimony in rendering a guilty verdict against Taebel, and there is no basis for this Court, sitting in habeas review, to second-guess the jury's decision. Accordingly, it was not objectively unreasonable for the First Department to reject Taebel's claim that the verdict was not based upon legally sufficient evidence.

### b. Martoni's Testimony is "Legally Incredible"

Taebel contends that a writ of habeas corpus should be issued because Martoni's testimony "does not make sense" and is "legally incredible." Petition at 6. Based upon Taebel's submissions on appeal, and construing the *pro se* Petition liberally, Taebel may be seen as arguing that no rational jury could have found that the prosecution proved the elements of the crimes with which he was charged beyond a reasonable doubt, as well as that no rational jury could have found that Taebel's conduct was unjustified. *See* SR. at 537-44, 558-59.

Initially, to the extent Taebel's argument relies on conflicts in the witnesses' statements, such matters go to the credibility of the witnesses, as explained above,

and is thus not reviewable at this juncture.  *See, e.g., Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) ("Petitioner's specific argument . . . that King's testimony was 'incredible,' is likewise not reviewable in habeas proceedings since credibility determinations are the province of the jury.").  In any event, a review of the testimony presented at trial makes it clear that a "rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

i.  Attempted Second-Degree Assault

Looking at the evidence in the light most favorable to the prosecution, a rational fact finder could have determined that the elements of attempted second-degree assault were proven beyond a reasonable doubt.

"A person is guilty of second-degree assault when . . . '[w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person.'"  N.Y. Penal Law § 120.05(1).  "Serious physical injury" means "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."  N.Y. Penal Law § 10.00(10). For attempted second-degree assault, the prosecution must prove an "attempt to commit a crime when, with intent to commit a crime, [the defendant] engages in conduct which tends to effect the commission of such crime."  N.Y. Penal Law § 110.00.

In his submissions on appeal, Taebel argued that there was legally insufficient evidence to prove that he "intended" to cause "serious physical harm" to Martoni.  SR. at 540-44, 558-59.  However, the jury could have inferred an intent to cause such an injury based on Martoni's testimony that Taebel continued to punch him in the head after he was already down and incapacitated.  TR. at 39-40.  That these subsequent punches were in the same exact spot as the first two could be seen as further evidence of an intent to do more harm than simply fight back.  Furthermore, Taebel's punches caused Martoni to suffer injuries serious enough to send him to the hospital, where he was diagnosed with orbital fractures to his eye socket.  *Id.* at 51-52.  Martoni's injuries kept him out of work for more than a month and required surgical treatment.  *Id.* at 53-55.  After the surgery, Martoni experienced numbness for about six months in his jaw.  *Id.* at 55.

Based on the evidence presented at trial, a rational trier of fact could have inferred that Taebel "intended the natural and probable consequences of his acts." *People v. Barboni*, 21 N.Y.3d 393, 405 (2013) (citing to *People v. Bueno*, 18 N.Y.3d 160, 169 (2011)).  A jury could have found—as the jury actually did in this case— that Taebel attempted to intentionally cause "serious physical injury" to Martoni, which would support a conviction for attempted second-degree assault.

## ii.    Third-Degree Assault

"A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) He recklessly causes physical injury to another person[.]"  N.Y.

Penal Law § 120.00(1)-(2).  "Physical injury" simply means "impairment of physical condition or substantial pain."  N.Y. Penal Law § 10.00(9).

Here, for the same reasons articulated as to the conviction for attempted second-degree assault, a rational trier of fact could have concluded that Taebel intended to, and did, cause harm to Martoni by punching him four times in the same spot, thereby inflicting a physical injury.  In addition, a jury could have believed Martoni's testimony about the significant extent of his physical injury, which was corroborated by the testimony of other witnesses, *see* TR. 94, 139, as well as by medical records, *see* SR. 214-34.  The jury thus could have found on the record presented that the prosecution proved the elements of N.Y. Penal Law § 120.00(1) or (2) beyond a reasonable doubt.

### iii.  <u>Justification Defense</u>

A person may only use physical force on another "to the extent he or she reasonably believes such to be necessary to defend himself . . . from what he . . . reasonably believes to be the use or imminent use of unlawful physical force by such other person."  N.Y. Penal Law § 35.15(1).  Here, the jury could have credited Martoni's testimony that Taebel struck him unexpectedly as Martoni was walking toward the elevators, and that at no point did Martoni try to strike him back.  TR. 39-42.  The jury could have believed that Taebel was, in fact, the aggressor in the altercation, and that his actions were motivated by his anger and irritation at being stopped and questioned by Martoni and Weinbaum.  *See* N.Y. Penal Law § 35.15(1)(b) (justification defense inapplicable if defendant was "the initial

aggressor"). Thus, looking at the evidence in the light most favorable to the prosecution, a jury also could have found that Taebel's conduct was not a justified act of self-defense.

### 4.     Weight of the Evidence Claim is Not Cognizable

Taebel does not cite "weight of the evidence" as a basis for appeal in the Petition. However, his submissions on direct appeal do contain the argument that the verdict was against the weight of the evidence. SR. 537-44, 548-49. To the extent that Taebel's *pro se* habeas petition, liberally construed, can be read to incorporate a "weight of the evidence" claim, such a claim would not be cognizable. A "weight of the evidence" claim is exclusively a matter of state law and therefore presents no federal question reviewable by a federal habeas court. *See, e.g.*, *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus."); *Quintana v. Lee*, No. 12-CV-3204 (PGG) (FM), 2014 WL 6749207, at *6 (S.D.N.Y. Nov. 18, 2014) (petitioner's weight of the evidence claim not cognizable on habeas review), *adopted by*, 2016 WL 2755918 (S.D.N.Y. May 11, 2016).

### III.     CONCLUSION

For all these reasons, I recommend that Taebel's petition for a writ of habeas corpus be denied.

### PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections (plus three days because the Report is being mailed to Petitioner). *See* Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable William H. Pauley, III and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Pauley.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010). If Taebel does not have access to cases cited herein that are reported on LexisNexis or Westlaw, he should request copies from counsel for the Respondent. *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009); Local Civil Rule 7.2, Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: November 29, 2017
New York, New York

_____
JAMES L. COTT
United States Magistrate Judge

**A copy of this Report and Recommendation has been sent to the following:**

Mitchell Taebel
IND. 2536-2012
2020 Golden Gate Dr.
Long Beach, IN 46360